# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EMMANUEL SHARP,**

        Plaintiff-Claimant,

    -vs-                                                          Case No. 14-C-673

**CAROLYN W. COLVIN**
**Acting Commissioner of Social Security,**

        Defendant-Respondent.

# DECISION AND ORDER

Plaintiff-Claimant Emmanuel Sharp ("Sharp") appeals the final decision of Defendant-Respondent Carolyn Colvin, the acting Commissioner of Social Security (the "Commissioner"), denying his application for supplemental security income ("SSI") benefits. The Court is reviewing the determination of the Administrative Law Judge ("ALJ") who, having conducted a hearing, found that Sharp had severe impairments: back disorders, deep venous thrombosis ("DVT"), carpel tunnel syndrome, asthma, and a history of ischemic attacks. (Tr. 22.) (ECF No. 12-3.) He also found that Sharp had additional non-severe impairments: a physical impairment—hypertension, and a mental impairment—past alcohol abuse. (*Id.*) In conjunction with Sharp's past alcohol use, the ALJ evaluated four functional categories and found that

Sharp had mild limitations in activities of daily living; no limitations in social functioning; a mild limitation in concentration, persistence or pace; and no episodes of decompensation that had been of extended duration. (*Id*. at 22-23.)

The ALJ further determined that Sharp had the residual functional capacity ("RFC") to perform light work so long as it was unskilled work involving simple routine tasks, frequent but not constant handling and fingering with the right hand, and no excessive exposure to fumes, odors, dust, gases or areas of poor ventilation.[1] (*Id.* at 23-24.) In finding Sharp not disabled, the ALJ further determined that based on Sharp's age, limited education, ability to communicate in English, lack of past relevant work, and RFC to perform light work there were a significant number of jobs in the national economy he could perform; including as an assembler,

---

[1] The Social Security Administration ("SSA") applies a five-step analysis to SSI claims. *See* 20 C.F.R. § 416.920. (1) The SSA considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 416.920(b). (2) It determines whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement. 20 C.F.R. § 416.920(c). (3) The SSA compares the impairment (or combination of impairments) found at step two to a list of impairments identified in the regulations ("the Listings"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a Listing, he is considered to be disabled, and the analysis concludes; if a Listing is not met, the analysis proceeds to the next step. 20 C.F.R. § 416.920(d). (4) The SSA considers the claimant's RFC and past relevant work. If the individual can perform his past relevant work, he is found to be not disabled, 20 C.F.R. §§ 416.920(f) and (h), if not, at step (5), the SSA considers the claimant's RFC, age, education, and work experience to see whether he can make the vocational adjustment to other work, 20 C.F.R. §§ 416.920(g) and (h). If he can make the adjustment the claimant is found to be not disabled; if not, he is found to be disabled.

inspector, and marker, as identified by the vocational expert ("VE"). (Tr. 27.) The Appeals Council denied review of the ALJ's decision, making it the final determination of the Commissioner. (Tr. 1-3.) 20 C.F.R. § 404.981; *Schomas v. Colvin,* 732 F.3d 702, 707 (7th Cir. 2013).

Sharp contends that the ALJ (1) failed to properly evaluate his amnestic disorder at step two of the evaluation, which impacted his RFC, credibility finding, and the evaluation of opinion evidence; (2) improperly evaluated Sharp's credibility; (3) improperly evaluated Sharp's RFC; and (4) posed an incomplete hypothetical to the vocational expert.

To uphold the denial of benefits, the ALJ's decision must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). To determine whether substantial evidence exists, the Court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley v. Colvin,* 758 F.3d 834, 836-37 (7th Cir. 2014).

The ALJ must articulate, at least minimally, his analysis of all relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and

- 3 -

"the [ALJ's] decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues," *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Additionally, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

An ALJ's credibility determination is entitled to "special deference." *Schomas,* 732 F.3d at 708. The Court will reverse an ALJ's credibility finding only if it is patently wrong. *See Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) (also noting that the ALJ must adequately explain his credibility finding).

**Amnestic Disorder**

With respect to Sharp's amnestic disorder, Thomas S. Lehman, Ph.D. ("Lehman") conducted a consultative examination[2] of Sharp on December 28, 2011, to address memory problems. Lehman issued a report which included the results of a mental status examination and Wechsler Memory Scale testing. (Tr. 424-30.) (ECF No. 12-9.) Lehman reported that Sharp had "an amnestic disorder secondary to stroke with general memory of 67 and preserved working memory of 83." (Tr. at 429.)

---

[2] Consultative examinations are arranged when the SSA does not have sufficient evidence about an individual's impairment. *See* 20 C.F.R. § 416.917.

- 4 -

Lehman also reported severity of psychosocial stressors, reduced activity level, difficulty with medical compliance, and social isolation, and found that Sharp had a "low average ability to understand, but a marked limitation in his ability to remember anything but simple job instructions." (*Id.*) In addition, Sharp had mild limitations in his ability to maintain concentration, attention, and pace; and mild limitations on his ability to withstand the stress of a routine workday or to adapt to changes.

The ALJ did not mention Lehman by name but noted that WMS-III scores (the test Lehman had administered) indicated deficits. (Tr. 23.) The ALJ also noted that there was no competent evidence that it was residual to past alcohol use. (*Id.*) The ALJ did not mention Lehman's other findings, including his finding that the memory disorder was linked to another physical impairment; that is, secondary to stroke.

With respect to Sharp's memory disorder, the ALJ also discussed the opinions of non-examining consultants Deborah Pape, Ph.D. ("Pape") (Tr. 454-71) and Susan Donahoo, Psy.D. ("Donahoo") (Tr. 343-46) (ECF No. 12-8). He gave little weight to Pape's assessment dated January 17, 2012, and some weight to that of Donahoo dated July 11, 2011. (Tr. 26.) The ALJ stated that Donahoo's opinion, which found no medically determinable impairment, was consistent with the record, pointing out

- 5 -

findings of normal mood, affect, judgment and thought content found in the record; and that Pape's opinion that Sharp had an amnesiac disorder was not substantiated by the evidence of record.

The weight given to consultative opinions is usually a matter reserved for the ALJ. *See* 20 C.F.R. § 416.927. However, Donahoo's opinion predates Lehman's evaluation and states that during clinical visits Sharp never complained of memory problems and denied having any mental status changes. That does not reflect Sharp's subsequent visit to Lehman, when his complaints of an impaired memory were corroborated by his ex-wife.

The ALJ's reliance on comments by Donahoo regarding Sharp's normal mood, affect, judgment and thought content may be irrelevant to the impaired memory issue because Lehman, too, found "normal affect and mood," and "adequate and intact" thought processes; but he also reported objective test results indicating memory deficits and "some memory difficulty recalling even personal information." (Tr. 426.) (Lehman also found "below average practical judgment and comprehension of the world around him." (Tr. 427.))

Lehman's report, which postdates Donahoo's evaluation, documents Sharp's complaint that he had been having a hard time remembering

things for several years. (Tr. 424.) Sharp's "cohabitating ex-wife" was a collateral informant, indicating that he had trouble remembering things for as long as she could recall and could not remember his wedding date or his age, was forgetful in general, and needed reminders to take his medication appropriately. (Tr. 425.)

Pape relied upon Lehman's report ("per recent CE") in finding that Sharp had an amnestic disorder (Tr. 459) which did not meet § 12.02 of the Listing of Impairments for organic mental disorders. Pape further detailed her reasons for concluding that Sharp could meet the mental demands of unskilled work. (Tr. 456.)

Despite the deference afforded the ALJ's assessment of medical evidence, his evaluation of Sharp's amnesic disorder is not supported by substantial evidence and requires remand of this matter to the Commissioner for further proceedings to reevaluate such evidence. Furthermore, such reevaluation may impact ALJ's assessment of Sharp's credibility, his RFC, and the additional steps in the sequential evaluation of a disability benefits claim. Because the ALJ's analysis may change significantly on remand, analysis of the additional issues raised by Sharp would not be meaningful.

The Court recognizes the Commissioner's assertion that despite the

- 7 -

ALJ's finding that the amnesic disorder was unsupported by the record, his mental RFC finding nonetheless included limitations consistent with Pape and Lehman's opinions that Sharp was limited to unskilled work involving only simple instructions and routine tasks. (Commissioner's Mem, 5.) (ECF No. 15.) However, the ALJ's errors may make a difference in the non-exertional aspects of Sharp's RFC.

Pape's report contains medical findings of severe amnesic disorder with moderate limitations in Sharp's ability to maintain concentration and attention, perform activities within a schedule and maintain regular attendance, complete a normal work day without interruptions from psychologically based symptoms, and respond appropriately to changes in the work setting; and a moderate difficulty in concentration, persistence or pace. (Tr. 454-55 and 468.) If these limitations are credited upon proper evaluation of the doctors' opinions, they should be included in the hypothetical presented to the VE to determine their effects on Sharp's RFC and remaining occupational base. *See Murphy v. Colvin*, 759 F.3d 811, 820-21 (7th Cir. 2014) (remanding due to the failure to incorporate limitations in concentration, persistence or pace into the hypothetical to the VE); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (awarding attorneys' fees based on finding of lack of substantial justification of

Commissioner's defense of incomplete evaluation of limitations in concentration, persistence, or pace); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) (remand because ALJ did not include limitations in concentration, persistence, or pace in hypothetical presented to VE).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision on Sharp's claim for SSI is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Decision and Order;

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2015.

           **BY THE COURT:**

           _____
           **HON. RUDOLPH T. RANDA**
           **U.S. District Judge**